*NOT FOR PUBLICATION*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMERICAN SOUTHERN HOME INSURANCE COMPANY, | Civ. Action No.: 16-3046 (FLW)(DEA) |
| Plaintiff, | **OPINION** |
| v. |  |
| UNITY BANK, |  |
| Defendant. |  |

**WOLFSON**, **United States District Judge:**

This matter arises out of an insurance coverage dispute between plaintiff American Southern Home Insurance Company ("American Southern"), the insurer, and defendant Unity Bank ("Unity"), the insured. American Southern has moved to dismiss Unity's counterclaim for breach of the duty of good faith and fair dealing, pursuant to Fed. R. Civ. P. 12(b)(6), based on the theory that American Southern failed to conduct a proper investigation into the cause of the loss at Unity's property and, consequently, wrongfully denied the insurance claim for coverage. Additionally, American Southern seeks to strike Unity's request for attorneys' fees and costs. For the reasons set forth below, American Southern's motion is hereby **GRANTED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual allegations in this case are straightforward. American Southern issued a forced placed insurance[1] policy (policy number NP-09-6319-0855) to Unity (the "Policy") on a

---

[1] "Forced placed insurance is hazard insurance purchased by a mortgagee(s) or servicer(s) of a mortgage(s) to protect the mortgagees' interest in the premises which are the subject of the

1

property located at 856 Landis Avenue, Elmer, New Jersey (the "Property"). See American Southern's Compl., ¶ 6; Ex. A. In relevant part, the Policy insures Unity against all direct loss caused by vandalism, which is defined as "willful and malicious damage to, or destruction of, the [Property]." Id. at Ex. A, p. 3. However, the Policy clearly provides that American Southern "will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or existing of burglars." Id. None of the parties dispute that the Policy was in full force and effect on January 1, 2016, the date of loss.

American Southern alleges that Unity claimed a loss at the Property in February 2016.[2] Id. at ¶ 7. "The loss was reported as vandalism and malicious mischief damage…." Id. at ¶ 8. After the loss, Jake Mello ("Mello"), an employee at J.S. Held Construction Constructing, and a purported third-party agent of American Southern, visited the Property to perform an inspection. Id. at ¶ 9. American Southern alleges that Mello discovered the following damage:

> (1) refrigeration equipment dismantled for the intended use for re-sale; (2) auction stickers located on refrigeration equipment; (3) copper piping stored on site from the dismantling of the refrigeration equipment; (4) missing ceiling mounted heaters; and (5) missing/displaced/damaged finishes associated to the copper piping removal and dismantling of equipment.

Id. at ¶ 11. Based on his investigation of the Property, American Southern alleges that "Mello concluded that the damage was caused by theft and/or caused by or resulting from theft," and he allegedly did not find any evidence of willful or malicious damage or destruction to the Property.

---

mortgage." Stevens v. Union Planters Corp., No. 00-1695, 2000 U.S. Dist. LEXIS 22630, at *2 (E.D. Pa. Aug. 20, 2000).

[2] It appears that Unity reported the loss to Van Wagenen Financial Services, Inc. ("Van Wagenen"), an insurance broker that Unity "engaged… to track its commercial and consumer loan real estate insurance policies, and to procure force-placed insurance policies for certain uninsured commercial and residential properties." Unity's Third-Party Compl., ¶¶ 4, 40. It further appears that Van Wagenen forwarded Unity's claim to American Southern.

Id. at ¶ 12. In its counterclaim, Unity alleges that, "by way of letter dated May 27, 2016, American Southern advised Unity that its insurance claim was denied on the basis that the damages to the Property was the result of theft rather than vandalism." Unity's Countercl., ¶ 11.

On May 27, 2016, American Southern filed this declaratory judgment action seeking a determination that Unity's loss was the result of theft, as opposed to vandalism, and as such, the loss is not covered under the Policy. On August 30, 2016, Unity filed its answer to the complaint, as well as three counterclaims against American Southern: Counterclaim I – breach of contract; Counterclaim II – declaratory judgment, seeking a determination that Unity's loss resulted from vandalism, and thus, covered under the Policy; and, Counterclaim III – breach of the duty of good faith and fair dealing. On September 16, 2016, American Southern filed a motion to dismiss Counterclaim III and strike the request for attorneys' fees, which Unity has opposed. No reply brief has been filed.[3]

## II. LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the

---

[3] On March 3, 2017, Unity filed a third-party complaint against Van Wagenen. On April 4, 2017, Van Wagenen filed a motion to dismiss Unity's third party complaint in its entirety. At this time, however, Van Wagenen's motion is not fully briefed, and is not the subject of this Opinion.

speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (internal quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the

4

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks and brackets omitted).

## III. DISCUSSION

### A. Counterclaim for Good Faith and Fair Dealing

In support of its motion, American Southern argues that Unity has failed to state a counterclaim for breach of the duty of good faith and fair dealing, since Unity does not allege any facts establishing that American Southern lacked a reasonable basis for denying Unity's claim, and that it knew or recklessly disregarded the lack of a reasonable basis. In opposition, Unity contends that it has adequately alleged its counterclaim for bad faith denial of coverage, because American Southern denied the claim, even though it failed to undertake an independent investigation into the cause of the alleged loss.

Under New Jersey law, it is well settled that every insurance contract includes an implied duty of good faith and fair dealing. Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 610 (2015); see Pickett v. Lloyd's, 131 N.J. 457, 467 (1993). An insured may pursue a cause of action against an insurer for a bad faith denial of benefits to which the insured is entitled under the insurance policy. Pickett, 131 N.J. at 461. A claim for bad faith may be based on, for example, an insurer failing to conduct a reasonable investigation or not attempting to negotiate in good faith with the insured. See Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 553 (2015); see also Barratt v. Metro. Life Ins. Co., No. 12-6734, 2015 U.S. Dist. LEXIS 39510, at *23 (D.N.J. Mar. 26, 2015); Lincoln Nat'l Life Ins. Co. v. Schwarz, No. 09-3361, 2011 U.S. Dist. LEXIS 62031, at *18 (D.N.J. June 9, 2011). Here, Unity's counterclaim for bad faith denial of coverage stems from

5

the allegation that American Southern conducted an inadequate investigation of the Property after the loss.[4]

To succeed on a bad faith claim, the insured must show: (i) the absence of a reasonable basis for denying the claim for coverage; and (ii) that the insurer knew or recklessly disregarded its absence of a reasonable basis. Pickett, 131 N.J. at 481; see Ketzner v. John Hancock Mut. Life Ins. Co., 118 Fed. Appx. 594, 599 (3d Cir. 2004); see also Feit v. Great-West Life & Annuity Ins. Co., No. 03-2948, 2005 U.S. Dist. LEXIS 24686, at *18-19 (D.N.J. Oct. 18, 2005) (stating that, "in an insurance contract, the insurer has a greater duty to act fairly and in good faith."). "Such bad faith claims are to be analyzed in light of a 'fairly debatable' standard, which posits that '[i]f a claim is 'fairly debatable,' no liability in tort will arise.'" Nationwide Mut. Ins. Co. v. Caris, 170 F. Supp. 3d 740, 748 (D.N.J. 2016) (quoting Pickett, 131 N.J. at 473). In other words, "if an insurance company's reasons for denying coverage are 'fairly debatable,' then the insurance company cannot be liable for bad faith." Nat'l Mfg. Co. v. Citizens Ins. Co. of Am., No. 13-314, 2016 U.S. Dist. LEXIS 180145, at *46 (D.N.J. Dec. 30, 2016); see Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 401 (D.N.J. 2000).

In its counterclaim, Unity alleges that "American Southern was under an obligation to act in good faith and to treat its insureds fairly and reasonably," but it "den[ied] Unity's claim under the Policy without conducting the proper investigation and due diligence in adjusting the claims." Unity's Countercl., ¶¶ 28, 30. With respect to the inadequacy of the investigation,

---

[4] Frequently, claims for bad faith are severed and stayed pending the adjudication of the breach of contract claim. See Procopio v. GEICO, 433 N.J. Super. 377, 383 (App. Div. 2013); see also Abiona v. GEICO Indem. Co., No. 15-6013, 2016 WL 1046791, at *4 (D.N.J. Mar. 16, 2016); Bridgewater Wholesalers, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co., No. 14-3684, 2015 WL 6737021, at *2 (D.N.J. Nov. 2, 2015).

Unity asserts that "American Southern failed to conduct an item-by-item consideration of the property and equipment that was lost or damaged to determine whether the specific loss or damage was the result of an act of vandalism." Id. at ¶ 13. Unity asserts that, as a result, "American Southern wrongfully concluded that all of the damage stemmed from an act of theft when there was no actual theft of property or equipment taken from the Property." Id. at ¶ 14.

Despite those allegations, Unity has failed to allege facts demonstrating that American Southern lacked a reasonable basis for denying the claim for coverage, or that it knew or recklessly disregarded its absence of a reasonable basis. See Pickett, 131 N.J. at 481. The parties do not dispute that Mello conducted an investigation at the Property, and that he concluded that the loss was the result of theft, and not vandalism. While Unity takes issue with the reasonableness of the investigation, it has not alleged any facts to support the claim that Mello, or any other individual, conducted the investigation in bad faith. Rather, as pled, Unity simply disagrees with how American Southern conducted its investigation, but allegations of simple negligence or mistake cannot support a claim for bad faith. See Badiali, 220 N.J. at 554; Pickett, 131 N.J. at 474; see also Wacker-Ciocco v. GEICO, 439 N.J. Super. 603, 613 (App. Div. 2015). Indeed, there are no factual allegations indicating that American Southern conducted a sham investigation in order to wrongfully denying Unity's claim, or that American Southern's investigation was so woefully deficient that it should have known it lacked a reasonable basis to deny coverage. Because Unity has failed to adequately allege a counterclaim for bad faith denial of coverage, the Court hereby grants American Southern' motion to dismiss Counterclaim III without prejudice. Unity may move to amend its counterclaim should discovery reveal bad faith conduct on the part of American Southern.

**B.** **Attorneys' Fees**

American Southern contends that Unity's request for attorneys' fees in all counterclaims should be struck from the pleadings, because N.J. Ct. R. 4:42-9(a) does not authorized fees to an insured who brings a direct suit against its insurer to enforce any claim for coverage. In opposition, Unity argues that N.J. Ct. R. 4:42-9(a) expressly permits attorneys' fees in cases where an insured is required to defend against a declaratory judgment action brought by an insurer. Unity maintains that, because it is required to defend itself from American Southern's declaratory judgment action, it is entitled to fees and costs on its bad faith claim.

In New Jersey, the courts "have traditionally adhered to the American Rule as the principle that governs the allocation of attorneys' fees." Walker v. Giuffre, 209 N.J. 124, 127 (2012). Under the American Rule, the prevailing party is prohibited from recovering attorneys' fees against the losing party. Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 449 (2015); see In re Estate of Vayda, 184 N.J. 115, 120 (2005). As a result, "litigants typically bear the cost of their own legal representation." Occhifinto, 221 N.J. at 449. "The purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they lose; and (3) administrative convenience." In re Niles Trust, 176 N.J. 282, 294 (2003). Nonetheless, attorneys' fees can be recovered "if they are expressly provided for by statute, court rule, or contract." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (internal quotations marks and citation omitted). Relevant here, N.J. Ct. R. 4:42–9(a) authorizes fee shifting in eight instances, see Occhifinto, 221 N.J. at 449-50, including "an action upon a liability or indemnity policy of insurance in favor of a successful claimant." N.J. Ct. R. 4:42–9(a)(6).

The New Jersey Supreme Court has explained that the purpose of N.J. Ct. R. 4:42–9(a)(6) is to "discourage[] insurance companies from attempting to avoid their contractual obligations

8

and force their insureds to expend counsel fees to establish the coverage for which they have already contracted." Occhifinto, 221 N.J. at 450; see Sears Mortgage Corp. v. Rose, 134 N.J. 326, 356 (1993). "The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy." Liberty Village Assocs. v. West American Ins. Co., 308 N.J. Super. 393, 406 (App. Div. 1998). At first glance, the policy considerations underlying N.J. Ct. R. 4:42–9(a)(6) appear to support Unity's argument that the Rule should permit attorneys' fees where an insured is required to defend against a declaratory judgment action brought by an insurer.

However, N.J. Ct. R. 4:42–9(a)(6) has only been applied in limited circumstances. Predominately, courts allow an award of attorneys' fees when an insurer has unjustifiably refused to defend or indemnify its insured for claims made against the insured by third parties. Myron Corp. v. Atlantic Mut. Ins. Corp., 407 N.J. Super. 302, 310-11 (App. Div. 2009), aff'd, 203 N.J. 537 (2010); see Giri v. Med. Inter-Ins. Exch., 251 N.J. Super. 148, 151 (App. Div. 1991); Guarantee Ins. Co. v. Saltman, 217 N.J. Super. 604, 611 (App. Div. 1987). In fact, the New Jersey Supreme Court has declared that "[t]he express terms of Rule 4:42-9(a)(6) state that it 'only applies when an insurer refuses to indemnify or defend its insured's third liability to another.'" Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 363 (1996) (quoting Giri, 251 N.J. Super. at 151); see Enright v. Lubow, 215 N.J. Super. 306, 311-12 (App. Div. 1987), certif. denied, 108 N.J. 193 (1987). Courts have also extended N.J. Ct. R. 4:42-9(a)(6) to allow an award of attorneys' fee where one insurer successfully prosecutes a coverage action, on behalf of its own insured, against another insurer for indemnification. See Tooker v. Hartford Accident & Indem. Co., 136 N.J. Super. 572, 576 (App. Div. 1975) (stating that "the

9

rule applies to all successful claimants, including an excess or secondary carrier which successfully prosecutes a coverage action against the primary carrier when the latter has wrongfully refused to defend its assured."), certif. denied, 70 N.J. 137 (1976); see Nationwide Mut. Ins. Co. v. Caris, No. 14-5330, 2015 WL 2400518, at *4 (D.N.J. May 19, 2015). These circumstances are not present, here. To the contrary, Unity's counterclaims seek a declaration that American Southern wrongfully disclaimed coverage for the loss at the Property, and that it did so in bad faith.

However, New Jersey courts have repeatedly held that N.J. Ct. R. 4:42-9(a)(6) does not allow attorneys' fees when an insured "brings direct suit against his insurer to enforce casualty or other direct coverage."[5] Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 280 (2004); see Eagle Fire Prot. Corp., 145 N.J. at 363 (stating that the commentary following N.J. Ct. R. 4:42-9 provides that "'it *should not be extended, beyond its express terms,* to permit a counsel fee award to be made to an insured who brings direct suit against his insurer to enforce casualty or other direct coverage.'") (emphasis in original) (quoting Pressler, *Current N.J. Court Rules*, Comment to N.J. Ct. R. 4:42–9). In addition, the court in Giri noted that "the Supreme Court has twice rejected recommendations by the Civil Practice Committee to amend R. 4:42-9(a)(6) to allow awards of counsel fees in a broader range of suits brought by insureds against insurers." Giri, 251 N.J. Super. at 151; see Eagle Fire Prot. Corp., 145 N.J. at 363.

---

[5] New Jersey courts have created a narrow exception to the general rule: attorneys' fees are permitted in a first-party claim for coverage in personal injury protection ("PIP") benefit actions. See Schaefer v. Allstate New Jersey Ins. Co., 376 N.J. Super. 475, 486 (App. Div. 2005). Because this action does not arise out of a personal injury, such as an automobile accident, Unity does not fall within the scope of that exception.

In the instant matter, while Unity argues that it is entitled to attorneys' fees because it was required to bring its counterclaims in response to American Southern's declaratory judgment action, that argument is misplaced. The simple fact that Unity has filed a counterclaim against American Southern does not automatically bring it within the purview of N.J. Ct. R. 4:42-9(a)(6). Rather, courts look to the substance of the claim to determine whether the Rule is applicable. Here, it is clear that Unity is not attempting to require American Southern to defend or indemnify Unity against liability for claims made against it by a third party. Instead, Unity's counterclaims involve claims for direct first-party coverage. Specifically, Unity seek a declaration that its loss at the Property was caused by vandalism, and that American Southern wrongfully denied Unity's claim for coverage under the terms of the Policy. Thus, attorneys' fees are not available under N.J. Ct. R. 4:42-9(a)(6). Finally, while Unity urges the Court to adopt a broader interpretation of the Rule than currently permitted by the law, this Court rejects Unity's attempts to expand the scope of the N.J. Ct. R. 4:42-9(a)(6).

## IV.     CONCLUSION

For the reasons set forth above, American Southern's motion is **GRANTED**. Specifically, the Court concludes that Unity has inadequately pled a counterclaim for breach of the duty of good faith and fair dealing in Counterclaim III, and that Unity is not entitled to attorneys' fees in the remaining Counterclaims I and II. To the extent that discovery reveals bad faith conduct on the part of American Southern, Unity may move to amend its counterclaim to so plead.

DATE: April 25, 2017               /s/ Freda L. Wolfson
                                   The Honorable Freda L. Wolfson
                                   United States District Judge