**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| AMERICAN SOUTHERN HOME | : | Civil Action No.  16-3046 FLW-DEA |
| INSURANCE COMPANY, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | **AND ORDER** |
| | : | |
| UNITY BANK, | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| UNITY BANK, | : | |
| | : | |
| | : | |
| **Third-Party Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| VAN WAGENEN FINANCIAL | : | |
| SERVICES, | : | |
| **Third-Party Defendant.** | : | |

**ARPERT, United States Magistrate Judge**

This matter comes before the Court on a Motion by Third-Party Defendant Van Wagenen Financial Services, Inc. for Attorney Fees. ECF No. 61; *see* Reply Br. at ECF No. 65. Unity Bank, Defendant/Third-Party Plaintiff, opposes the Motion. *See* ECF No. 64. The Court has fully reviewed the submissions of the parties and considers same without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Van Wagenen's Motion is **GRANTED**.

## I.    BACKGROUND[1]

The facts and procedural history of this matter are well known to the parties and need not be recited at length. Briefly, the facts pertinent and necessary to disposition of this Motion are as follows:

On or about October 22, 2013, Plaintiff American Southern Home Insurance Co. ("American Southern") sold an insurance policy to Defendant Unity Bank ("Unity"), of New Jersey, covering property at 856 Landis Avenue in Elmer, New Jersey[2] on which Unity held a mortgage lien. ECF No. 1 at ¶6; ECF No. 1-2 at p.2. Plaintiff alleges the policy covers damage to the property caused by vandalism but not damage "caused by or resulting from theft." Id. at ¶15; *see also* Exhibit A at ECF No. 1-3. Prior to July 2015 the property was occupied by a business called Eatmor Supermarket that was either a Unity Borrower or a tenant of a Unity Borrower. Third-Party Complaint, ECF No. 18 at ¶25. After that business ceased operations in late 2015 the property became vacant. Id. at ¶26. In January 2016, the property sustained significant damage, including water damage, throughout the building. Id. at ¶30-31. Since 2009, Unity had engaged Third-Party Defendant Van Wagenen Financial Services Inc. ("Van Wagenen"), of Minnesota, to track and evaluate insurance coverage on properties in which Unity had an interest. Id. at ¶4. The damage was reported to American Southern and a claim was filed. Counter-Complaint at ECF No. 7 at ¶9. On February 25, 2016, the property was inspected for American Southern by Jake Mello, of JS Held Construction Consulting. ECF No. 1 at ¶9. Mr. Mello reported that the building had been occupied by a retail grocery store but was vacant. Id. at ¶10. Mr. Mello further reported that: 1) refrigeration equipment had been dismantled for intended resale; 2) auction

---

[1] The following facts are taken primarily from American Southern's Complaint, ECF No. 1, Unity Bank's Counter-Complaint, ECF No. 7, and Unity Bank's Third-Party Complaint, ECF No. 18 and are assumed true for purposes of this Memorandum.

[2] The property is identified as 694-856 Landis Avenue, Pittsgrove, New Jersey 08318 in Unity's Third-Party Complaint.

stickers had been placed on refrigeration equipment; 3) there was copper pipe stored on the property from the dismantled refrigeration gear; 4) ceiling-mounted heaters were missing; and 5) "missing/displaced/damaged finishes associated" with the removal of the copper piping and the dismantling of the equipment. Id. at ¶11. Mr. Mello concluded both that the damage was caused by theft and that there was no evidence of "willful or malicious damage or destruction of the building," or vandalism. Id. at ¶¶12-13. By letter dated May 27, 2019, Plaintiff advised Unity that the claim was denied, citing Mr. Mello's conclusions. Counter-Complaint at ECF No. 7 at ¶11. That same day, Plaintiff filed the instant one-count Complaint, seeking a Declaratory Judgment that the policy's theft exclusion provision was triggered and, thus, that Plaintiff was "not obligated to provide coverage for Defendant's loss." ECF No. 1 at ¶24. On August 30, 2016, Unity filed an Amended Answer stating that the damage arose out of vandalism and denying that a recovery under the policy was precluded by the theft clause. *See* ECF No. 7, Answer to Count I at ¶16-25. In addition to nineteen defenses, Defendant's filing included a Counter-Complaint alleging breach of contract (Count I) and breach of duty of good faith and fair dealing (Count III) against American Southern. Counter-Complaint at ECF No. 7. It also sought a declaratory judgment that American Southern was obligated to pay the claim. Id. Plaintiff filed a Motion to Dismiss the Counter-Complaint as to Count III and to strike Unity's request for attorney's fees on September 16, 2016. ECF No. 10. On March 3, 2017, Unity filed a two-count, Third-Party Complaint against Van Wagenen, alleging negligence (Count I) and breach of fiduciary duty (Count II). ECF No. 18. Essentially, Unity claimed Van Wagenen was obligated to advise Unity of gaps in insurance coverage on properties in which Unity had an interest and, as its insurance broker, to then procure insurance to fill those gaps. Id. at ¶¶6-10. Unity alleges Van Wagenen "endeavored to procure a master forced-placed insurance policy for

Unity" around 2009 and that American Southern did issue a forced-placed insurance policy to
Unity in December 2009. Id. at ¶¶11-12. But, that policy contained a theft-exclusion clause,
"notwithstanding the need for such coverage" for Unity's portfolio of properties, which included
"vacant and abandoned commercial properties that were exposed to risk of theft." Id. at ¶¶16, 19.
Though Van Wagenen allegedly never advised Unity of this gap in coverage, near the end of
2013 American Southern "amended the Policy to provide an optional 'all-risk' endorsement
which would have provided coverage for Unity in the event of a loss resulting from theft." Id. at
¶17-18. Unity alleges Van Wagenen did not perform annual or regular reviews of Unity's
properties and associated insurance and thus did not identify gaps in insurance coverage on those
properties, "Unity never obtained the optional 'all-risk' coverage." Id. at ¶¶20-21,23.

Van Wagenen filed a Motion to Dismiss the Third-Party Complaint on April 3, 2017.
ECF No. 27. On April 25, 2017, U.S. District Judge Freda L. Wolfson granted American
Southern's Motion to Dismiss the Counterclaim. ECF No. 33. As to Count III's bad faith claim,
Judge Wolfson ruled that Unity "failed to adequately allege a counterclaim for bad faith denial of
coverage." Id. at p.7. Judge Wolfson also denied Unity's request for attorney's fees, stating that
"the Court rejects Unity's attempts to expand the scope" of New Jersey Court Rules allowing a
grant of attorney's fees in certain insurance actions. Id. at p.11. An Amended Complaint was
filed September 27, 2017; Unity filed an Amended Answer the following day. ECF Nos. 47, 48.

On September 28, 2017, Judge Wolfson granted Van Wagenen's Motion to Dismiss the
Third-Party Complaint. ECF No. 50; *see also* Transcript of Hearing at ECF No. 51. Judge
Wolfson's decision was based on a written so-called Tracking Agreement between the parties
that, absent any other contract, defined Van Wagenen's obligations to Unity, obligations that
expressly did not include "issu[ing] any policies or form of insurance by reason of any absence

or deficiency in the insurance coverage on any real estate mortgage unless requested." ECF No. 51 at p.13, l.19-23. Furthermore, Judge Wolfson stated, the Tracking Agreement expressly "relieves [Van Wagenen] of any obligation for their basic negligence, but not for gross negligence or willful misconduct." Id. at p.13-14. Though Unity argued that there was an oral agreement between the parties providing that Van Wagenen was required to purchase insurance on Unity's behalf, Judge Wolfson determined that, because the Tracking Agreement was determinative in the absence of proof of another expression of the two parties' relationship, Unity would have to replead the Complaint to provide a basis for both Unity's negligence and breach of fiduciary duty claims. Id. Judge Wolfson granted the Motion to Dismiss, but allowed Unity 15 days to amend its Complaint. Id. Unity did not amend its Complaint. On November 1, 2017, Van Wagenen filed a Motion for the Entry of Judgment under Rule 54(b). ECF No. 53. Judge Wolfson granted that Motion on September 11, 2018. ECF No. 60. Van Wagenen filed the instant motion on October 10, 2018, pursuant to Fed. R. Civ. P. 54, L.Civ.R. 54.2 and Judge Wolfson's Order. ECF No. 61. The underlying litigation between American Southern and Unity was referred to arbitration by Order dated April 26, 2018 and then terminated. ECF No. 58; *see also* Docket Entry dated June 1, 2018.

## II.    **LEGAL STANDARD**

As the Third Circuit has stated, "[u]nder the 'American rule,'" parties ordinarily are responsible for their own attorney's fees. Truesdell v. Philadelphia Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002); *see also* Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, an award of such fees and costs may be authorized by statute, contract, or other exceptional circumstances. Flamini v. Valez, No. CIV. 12-7304 RMB/JS, 2015 WL 333300, at *2 (D.N.J. Jan. 23, 2015) (*citing* Polonski v. Trump Taj Mahal Ass'n, 137 F.3d 139, 145 (3d Cir.1998).

Fed. R. Civ. P. 54(d)(1) provides in relevant part: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." <u>New Jersey Manufacturers Ins. Grp. v. Electrolux, Inc.</u>, 2013 WL 5817161, at *1–2 (D.N.J. Oct. 21, 2013). A prevailing party is "one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a portion thereof." <u>Garonzik v. Whitman Diner</u>, 910 F.Supp. 167, 168 (D.N.J.1995) (<i>citing</i> <u>Fahey v. Carty</u>, 102 F.R.D. 751 (D.N.J.1983)). As the Supreme Court of the United States has stated, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There is such a strong presumption that costs should be awarded to the prevailing party that, " '[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.'" <u>Reger v. Nemours Found., Inc.</u>, 599 F.3d 285, 288 (3d Cir. 2010) (<i>quoting</i> <u>In re Paoli R.R.Yard PCB Litig.</u>, 221 F.3d 449, 468 (3d Cir.2000)). The rationale behind this presumption is that the denial of costs is tantamount to a penalty. Id. at 288–89 (<i>citing</i> <u>ADM Corp. v. Speedmaster Packaging Corp.</u>, 525 F.2d 662, 665 (3d Cir.1975)).

## III. DISCUSSION

### A. *Van Wagenen's Arguments in Support of the Motion*

Van Wagenen makes three points in support of its motion to recover attorney's fees expended in defending itself against Unity's Third-Party Complaint. First, it points to Rule 54(d), though that merely sets the process by which a party may seek from a court an award of attorney's fees. Third-Party Def.'s Br. in Support of Mot. for Attorney's Fees, ECF No. 61-1 at

p.6. Second, it points to <u>Wingate Inns Intern., Inc. v. PGS, LLC</u> for the proposition that under New Jersey law "attorney's fees may be recovered pursuant to an express term in a contract." Id. (*citing* <u>Wingate</u>, 20112 WL 3550764, at *7 (D.N.J. Aug. 16, 2012). Finally, Van Wagenen points to the Tracking Agreement that was the only evidence before Judge Wolfson that defined the relationship between Unity and Van Wagenen. Id. at p.6. That Tracking Agreement contains a "Hold Harmless" clause, which provides: "Unity Bank shall hold van Wagenen harmless from any claim, including its reasonable attorney's fees and court costs, resulting from van Wagenen's negligence in the performance of its duties herein." Id. Van Wagenen emphasizes that the contract indemnifies Van Wagenen from "any claim," language that "is not limited to third party claims or in any other way." Id. at p.7. Furthermore, Van Wagenen says, this Hold-Harmless Clause expressly calls for Unity to indemnify Van Wagenen for its "reasonable attorney's fees and court costs." Id. at p.8. To that end, Van Wagenen contends the billable hours claimed and the hourly rate stated in the certifications of its attorneys supporting the Motion represent work required for the litigation and hourly rates that are reasonable based on the experience of each of the attorneys and paralegals that worked on this matter. Id. at pp.8-12.

   **B.  *Unity's Arguments in Opposition to the Motion***

   Unity counters that Van Wagenen is not entitled to attorney's fees because the Tracking Agreement was not implicated in the underlying litigation. *See* Unity Br. in Opp. to Mot. for Attorney's Fees; ECF No. 64 at p.3. Unity contends here, as it did in the Motion to Dismiss hearing before Judge Wolfson, that the Tracking Agreement applied only to Van Wagenen's "obligations as a tracker of Unity's insurance policies," but was inapplicable to Van Wagenen's obligations to Unity "as its insurance broker." Id. Unity contends that, "In ruling for dismissal, [Judge Wolfson] did not make any final determination as to whether the Tracking Agreement

governed both VW's obligations as both an insurance tracker, and as a broker." Id. at p.3. Rather, Unity continues, "the Court found that Unity's Third-Party Complaint did not adequately plead a cause of action for broker negligence." Id. As a result, Unity states, its position as to the instant motion is "that the Third-Party Complaint properly pled a common-law cause of action for broker negligence, and that this cause of action is beyond the scope of the Tracking Agreement." Id. at p.5. Because this is beyond the scope of the Tracking Agreement, Unity contends, the Hold-Harmless Clause in which Van Wagenen grounds its Motion is not implicated.

In the alternative, Unity contends the $53,282.28 of attorney's fees and costs sought by Van Wagenen should be reduced because it represents an unreasonable number of hours worked for litigation that spanned nine months and resulted in just three filed pleadings: the Motion to Dismiss, ECF No. 27, the Motion for Judgment, ECF No. 53, and the instant Motion for Fees, ECF No. 60. More specifically, Unity objects to the inclusion of $2,871.57 of travel costs and expenses associated with the attendance of Florida counsel for Van Wagenen at a deposition in New Jersey and at the hearing in New Jersey for the Motion to Dismiss. Id. at p.10. Unity cites Interfaith Cmty. Org. v. Honeywell Int'l, Inc. for the proposition that in the Third Circuit "[o]ur Courts have consistently held that 'a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs or the costs of local counsel.'" Id. (*quoting* Interfaith Cmty., 426 F.3d 694, 710 (3d Cir. 2005), as amended (Nov. 10, 2005)).

Unity also objects to Van Wagenen counsel's "fees and costs associated with the preparation and attendance of Jake Mello's deposition," contending that any "testimony elicited during that deposition would have no bearing on the claims between Unity and VW." Id. at p.12. Unity did not quantify the fees and costs associated with this specific objection. Lastly, Unity contends "much of the legal work for which VW seeks recovery, was unnecessary and

overstated." Id. at pp.12-13. As an example of unnecessary work, Unity points to more than six hours of attorney work associated with drafting and researching a Rule 11 motion that was unnecessary because it "relates to Unity's amended Third-Party Complaint which was never filed." Id. at p.13. As examples of overstated work, Unity points to Van Wagenen's Motion for Final Judgment and the instant motion. Id. As to examples of the former, Unity contends the more than six hours billed for the Judgment Motion is excessive because the "submission is a simple 2-page request and proposed order," while it contends the more than 11 hours billed for the instant motion is overstated "in light of the fact that VW's counsel spent nearly the same amount of time drafting the supporting and reply papers for its dispositive Motion to Dismiss." Id. Unity does not propose an amount that would represent its estimate of a reasonable total of fees and costs.

### C. *Van Wagenen's Reply*

Van Wagenen replies that Unity's attempt to "draw a distinction between contract claims and common-law negligence" is of no merit because the Tracking Agreement "clearly states that Unity agrees to pay attorneys' fees and costs for *any* claim for negligence." VW Reply Br.; ECF No. 65 at p.8 (*emphasis in original*). And even if that were not the case, Van Wagenen states that the Tracking Agreement, contrary to Unity's contention, "was the sole basis of the relationship between Unity and VW, and governed the scope of VW's duties." Id.

Van Wagenen cites Schlombohm v. Spa Petite for the proposition that exculpatory clauses such as the Hold-Harmless Clause here are valid in Minnesota when they are unambiguous and limited in scope. Id. at p.9 (*citing* Schlombohm, 326 N.W.2d 920, 922–23 (Minn. 1982)). Here, the Hold-Harmless Clause is unambiguous, Van Wagenen says, because it

refers to "any claim," and it is limited because it specifically excludes "gross negligence and willful conduct." Id. at p.9.

As to the fees sought, Van Wagenen contends the $2,871.57 quoted by Unity does not represent a claim for reimbursement for out-of-state travel-related time and expenses but rather represents time that was, as noted on the invoices, mitigated by work on other matters and thus resulted in travel "within the range of reasonable travel for even local counsel." Id. at p.11 (*citing* Coal. to Save Our Children v. State Bd. of Ed. of State of Del., 901 F.Supp. 824, 834 (D.Del. 1995)) ("As in *Monsanto,* the court recognizes that plaintiffs could have chosen a local counsel who was both within this jurisdiction, but over two hours away. Therefore, the court has granted compensation for adequately documented travel time for counsel from New York because there are parts of Delaware that are equally as distant as New York in travel time.")

Van Wagenen justifies its attorney's attendance at the deposition of Mr. Mello—hired by American Southern to evaluate the cause of damage to the Landis Avenue property—by pointing out that whether that damage was caused by vandalism or theft was an issue "determinative as to whether VW could potentially be held liable if Unity properly pled its third-party claims." Id. at p.12. Thus, attendance by counsel for Van Wagenen "was therefore necessary for VW to properly defend itself against the third-party lawsuit." Id.

Van Wagenen contends its hourly rates "are well-within with (sic) what this District has found to be reasonable for attorneys of commensurate experience." Id. (*citing* Fed. Trade Comm'n v. Circa Direct LLC, 912 F.Supp.2d 165, 174 (D.N.J. 2012) (finding that $400 an hour was warranted for attorneys with more than 15 years of experience, $350 for those with more than 12 years of experience and $275 for more than four years of experience)). It also contends that all the hours billed were required for litigating claims on which it ultimately prevailed.

While Unity claimed the hours billed were excessive considering the filing of only three pleadings with the Court, Van Wagenen contends Unity's list, among other deficiencies, fails to take into account time necessary for discovery. Id. at p.13. Van Wagenen says "Unity served twenty requests for production and twenty-four interrogatories to VW, with multiple sub-parts, requiring the review and production of nearly 7,000 pages of documents from VW's files." Id.

Finally, Van Wagenen contends Unity's opposition is "undercut by Unity's persistently relitigating the same issues in hopes of a different outcome….Rearguing these same issues in its opposition to VW's motion for attorneys' fees and costs serves to only increase VW's costs and fees in again responding to the same legal arguments." Id. at pp.13-14. As an example, Van Wagenen says its legal expenses have continued to accrue after final judgment. Id. As evidence of that, Van Wagenen submits a further declaration from counsel contending that the total legal fees and costs now sought is $63,662.28, including $10,380 incurred since October 1, 2018, a period that includes the filing of the instant Motion. Id. at p.14.

## IV.    ANALYSIS

Fed. R. Civ. P. 54 provides that a Motion for Fees must "be filed no later than 14 days after the entry of judgment" unless a statute or court order provides otherwise. Here, the Order of Final Judgment provided that "any motion for an award of attorneys fees and costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure must be filed within thirty (30) days of" September 11, 2018. ECF No. 60. Pursuant to that Order, the instant Motion was filed on October 10, 2018, or one day before that 30-period lapsed. Thus, the Motion was timely filed.

Rule 54 also provides that costs "should be allowed to the prevailing party," unless otherwise barred by federal statute, court order or the rules. As the Supreme Court has stated, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on

any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). For the purposes of this Motion then, Van Wagenen is a prevailing party because Judge Wolfson granted its Motion to Dismiss the Third-Party Complaint.

In her Opinion on a different motion in this matter, Judge Wolfson laid out the legal standard in New Jersey for considering an award of attorney's fees. There, Judge Wolfson wrote:

> In New Jersey, the courts "have traditionally adhered to the American Rule as the principle that governs the allocation of attorneys' fees." Walker v. Giuffre, 209 N.J. 124, 127 (2012). Under the American Rule, the prevailing party is prohibited from recovering attorneys' fees against the losing party. Occhifinto v. Olivo Const. Co., LLC, 221 N.J. 443, 449 (2015); see In re Estate of Vayda, 184 N.J. 115, 120 (2005). As a result, "litigants typically bear the cost of their own legal representation." Occhifinto, 221 N.J. at 449….Nonetheless, attorneys' fees can be recovered "if they are expressly provided for by statute, court rule, or contract." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (internal quotations marks and citation omitted). ECF No. 33 at p.8.

Van Wagenen points to the Tracking Agreement as the contract that sets out the contours of the relationship between Unity and Van Wagenen. "Under New Jersey law, parties are permitted to contract to shift fees and costs in the event of litigation between them, provided such contractual provisions are reasonable." Ramada Worldwide Inc. v. Southport, LLC, No. 11-CV-03676 DMC JAD, 2013 WL 3286115, at *9 (D.N.J. June 27, 2013) (citing North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 158 N.J. 561, 730 A.2d 843, 848 (N.J.Sup.Ct.1999). The Tracking Agreement does just that, providing that each party will hold the other "harmless from any claim, including its reasonable attorney's fees and court costs, resulting from [the other party's] negligence in the performance of its duties herein." ECF No. 61-6 at p.3.

This is not dispositive, however, because the Tracking Agreement provides that it "shall be construed in accordance with Minnesota law." ECF No. 61-6 at p.4. Yet Minnesota law is similar to New Jersey, as "[a]ttorney fees are recoverable if specifically authorized by contract or statute." Marquette Bus. Credit, Inc. v. Gleason, No. 14-CV-00354-MJD-LIB, 2015 WL 5836323, at *3 (D. Minn. Oct. 6, 2015) (*quoting* Horodenski v. Lyndale Green Townhome Ass'n, Inc.*,* 804 N.W.2d 366, 371 (Minn.Ct.App.2011) (*quoting* Van Vickle v. C.W. Scheurer & Sons, Inc., 556 N.W.2d 238, 242 (Minn.Ct.App.1996), *review denied* (Minn. Mar. 18, 1997)).

Van Wagenen contends this exculpatory clause is valid under Minnesota law, citing Schlombohm, because it is unambiguous and limited in scope. *See* Schlombohm, 326 N.W.2d at 922–23. Unity does not dispute that the exculpatory clause appears in the contract, nor that it is valid. Rather, Unity's argument in both the Motion to Dismiss and here is that the Tracking Agreement does not define the entire relationship between the parties. Unity says this contract covers only Van Wagenen's duties as a tracker of insurance policies on Unity properties, but it does not cover Van Wagenen's duties as Unity's insurance broker.

The Court is not persuaded by Unity's position. As an initial matter, the Court recognizes that Unity made this same argument before Judge Wolfson, who concluded Unity had not adequately pleaded a factual basis for this contention. Judge Wolfson gave Unity the opportunity to amend its Third-Party Complaint to add such a factual basis and Unity failed to do so. Thus, this Court can consider only the Tracking Agreement as a contract defining the parameters of the relationship between the parties. Furthermore, a review of the Tracking Agreement reveals a clause stating that "[t]his Agreement represents the entire agreement of the parties." ECF No. 61-6 at p.4. Like Judge Wolfson, without a further basis in fact, this Court is unwilling to proceed on the basis of Unity's contention of a further dimension to the relationship of the parties.

Thus, the question before this Court is whether the Hold-Harmless Clause of the Tracking Agreement is a valid clause to be enforced via the instant motion. As the Tracking Agreement provides that the "Agreement shall be construed in accordance with Minnesota law," the Court is persuaded that, pursuant to <u>Schlombohm</u>, this clause is valid because it is unambiguous and it is limited only to any negligence of the parties, and so does not apply to, say, any gross negligence or willful misconduct. In this, the Court also follows Judge Wolfson, who stated during oral argument of the Motion to Dismiss that the Tracking Agreement includes "an exculpatory clause that clearly is valid under Minnesota law, and I think it would be valid under New Jersey law…." ECF No. 51 at 13:4-5. Because the underlying litigation revolved around Unity's allegations of behavior that was less than gross negligence and willful misconduct, the Court concludes the exculpatory clause applies to the Third-Party litigation here claiming negligence. Thus, the Court concludes Unity is contractually obligated to reimburse Van Wagenen for its reasonable attorney's fees and court costs.

Van Wagenen asserts total attorney's fees and costs of $63,662.28. Unity objects, stating that the amount sought is excessive "for a case that was disposed of in a mere nine (9) months" and included "only filing three (3) pleadings with the Court: the Motion to Dismiss; the Motion for Judgment; and the instant Motion for Fees." Unity Br. in Opp. to Mot. at p.9.

The Court's inquiry begins with an examination of the hourly rates sought by Van Wagenen. Though the Tracking Agreement is to be construed under Minnesota law, in this district a "reasonable hourly rate should be determined by examination of the prevailing market rate in the relevant community at the time of the fee petition." <u>Fed. Trade Comm'n v. Circa Direct LLC</u>, 912 F. Supp. 2d 165, 173 (D.N.J. 2012) (*citing* <u>L.J. v. Audubon Bd. of Educ.</u>, 373 Fed.Appx. 294, 296 (3d Cir.2010) (quotations and citation omitted)). Van Wagenen contends its

hourly rates are reasonable pursuant to Fed. Trade Comm'n, discussed above. Unity is silent on this issue. This Court agrees that the hourly rates, ranging from $250 to $400 an hour for attorney time, are reasonable as they adhere to the fee structure set out in Fed. Trade Comm'n.

The Court turns next to the issue of billed time. Unity objects to the total of roughly 180 hours of billed time submitted by Van Wagenen's eight attorneys. Unity contends this is too much time for "only filing three (3) pleadings" for a case disposed of in nine months. A review of the docket for this matter shows that, since filing a notice of appearance on March 29, 2017, ECF No. 23, Van Wagenen's attorneys filed a Motion for Extension of Time to File an Answer, ECF No. 24; a Motion for Leave to Appear Pro Hac Vice, ECF No. 26; a Motion to Dismiss, ECF No. 27; a separate Memorandum in Support of that motion, ECF No. 28, as well as a separate exhibit, ECF No. 29; the Corporate Disclosure Statement required by the local rules, ECF No. 30; five letters to the Clerk or this Court, ECF Nos. 37,38,45,46,59; the Motion for Entry of Judgment, ECF No. 53, and a Reply Brief, ECF No. 56, to Unity's Certification of Opposition; and finally two briefs and declarations in support of the instant Motion. ECF No. 61,65. Certainly some of this work required little effort or expertise. But in total it is clear Van Wagenen's filings with the Court were more extensive in number than the three pleadings and, as briefing on the instant Motion concluded only in November 2018, nearly a year beyond the nine months mentioned by Unity. Also, as discussed above, Van Wagenen notes that Unity's discovery requests required it to review more than 7,000 documents, which added to the time required to prosecute this litigation.

In the Third Circuit, a "court may not reduce an award *sua sponte;* rather, it can only do so in response to specific objections made by the opposing party." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005), as amended (Nov. 10, 2005) (*citing* Bell

v. United Princeton Properties, Inc., 884 F.2d 713, 719 (3d Cir.1989). "But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." Id. In Minnesota, the test for determining the reasonableness of attorney fees is "[t]he time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." Northfield Care Ctr., Inc. v. Anderson, 707 N.W.2d 731, 736 (Minn. Ct. App. 2006) (citing State by Head v. Paulson, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971).

### A. Total Hours

Before the Court considers the Northfield Care reasonability test, it will first consider the specific objections raised by Unity. First, Unity argues that more than six hours of work is excessive for the Final Judgment Motion and that 11.26 hours is excessive for the instant Motion for Fees. Unity does not suggest what it considers would be the appropriate amount of time for such work. Van Wagenen declares that "all of the hours included in the fee motion were necessary to litigate the claims on which VW ultimately succeeded." ECF No. 65 at p.13. Van Wagenen further states that Unity's objections "are undercut by Unity's persistently relitigating the same issues in hopes of a different outcome." Id.

The Court observes that this overarching Unity objection contests less than 10% of the total billed hourly time in this matter. Also, it is clear some time was required to prosecute these specific matters. For instance, the Motion for Fees includes a 15-page brief in support of the motion, as well as a three-page declaration of Van Wagenen's local counsel, a four-page declaration of Van Wagenen's out-of-state counsel, and three exhibits totaling 85 pages. The Court determines that this output represents a significant outlay of billed time. Furthermore, as

16

the Hold-Harmless Clause was the product of contractual negotiations of the parties, the Court will not reduce the total number hours invoiced by Van Wagenen's counsel in the absence of a more-explicit objection from Unity.

### B. Deposition of Mr. Mello

Unity objects to any billed time for Van Wagenen's attendance at the deposition of Mr. Mello, on whom American Southern relied for the contention that the Landis Avenue property was damaged by theft, not vandalism, and thus that American Southern was justified in not paying Unity's claim. Unity argues that this issue mattered only to the coverage dispute between it and its insurer, not to any dispute between Unity and its insurance tracker. Unity further states that a "cursory review" of the deposition transcript shows that Van Wagenen's counsel asked "only four (4) questions at the very end of the depositions."

Van Wagenen contends attendance was required because whether the damage resulted from theft or vandalism was "an issue determinative as to whether VW could potentially be held liable if Unity properly pled its third-party claims," pointing to paragraph 16 of the Third-Party Complaint providing "that there is a theft exclusion in the insurance policy, as opposed to vandalism which is covered by the policy." VW Reply Br. at p.12 and n.4.

The Court observes first that a cursory review of the deposition transcript reveals that Van Wagenen's counsel asked five questions, not four, and that all were focused on Mr. Mello's inspection. The Court also observes that paragraph 16 of the Third-Party Complaint is contained in a section titled "Facts Common to All Counts," and so Unity considered this a foundational fact in the Third-Party litigation. Lastly, the Court observes that in the initial action, American Southern sought a declaratory judgment that it did not have to pay Unity's claim because it was right to conclude the damage was the result of theft, which was excluded from the policy's

17

coverage. So, if Unity could cast doubt on the conclusion of theft its position in that litigation would have been much stronger. Concomitantly, if Unity prevailed in the American Southern litigation, then Unity's Third-Party Complaint alleging negligence against Van Wagenen would be moot. Thus, the Court agrees that whether the damage to the property was theft or vandalism was an issue determinative as to any potential liability of Van Wagenen and so Van Wagenen was justified in participating in the deposition of Mr. Mello.

### C. Travel Costs

As a final matter, Unity objects to reimbursement of costs and expenses for Van Wagenen's out-of-state counsel in Florida to travel twice to New Jersey, citing Interfaith Cmty. Org. 426 F.3d at 711. There the Third Circuit held that "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 710 (3d Cir. 2005), as amended (Nov. 10, 2005). There are two obstacles to Unity's argument. First, at issue in Interfaith Cmty. Org. was a motion for fees for pursuant to 42 U.S.C. § 6972(e). Id. at 699. But at issue here is not a statutory provision for fees as was before the Third Circuit, but rather a Hold-Harmless Clause of the Tracking Agreement negotiated by the parties. Thus, Interfaith Cmty. is inapplicable to the determination of this Motion seeking fees based on the contract between the parties. Second, the Tracking Agreement clearly states that Minnesota law, and thus not Third Circuit jurisprudence, governs interpretation of the contract. So, this Court looks at the contract's language through the prism of Minnesota law for any limitations provided therein. The Court finds the only limitation in that language is that any award must meet a reasonableness standard. In Minnesota, "[t]he test for determining the reasonableness of attorney fees is '[t]he time and labor required; the nature and difficulty of the

18

responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client.'" Northfield Care Ctr., Inc. v. Anderson, 707 N.W.2d 731, 736 (Minn. Ct. App. 2006) (*citing* State by Head v. Paulson, 290 Minn. 371, 373 (1971).

The Court begin its inquiry into the Northfield Care factors by noting that Judge Wolfson granted Van Wagenen's Motion to Dismiss the Third-Party Complaint and then its Motion for Judgment pursuant to Rule 54. Thus the result obtained by Van Wagenen's counsel makes Van Wagenen the prevailing party in this litigation, and thus this factor weighs in favor of Van Wagenen. This Court already has determined that the hourly rates sought are reasonable. Since those rates were tied to specific tiers of experience, and so presumably to ability and reputation, pursuant to Fed. Trade Comm'n, it is axiomatic that the Northfield care factors of experience, reputation, and ability of counsel weigh in favor of Van Wagenen.

As both sides are silent on the Northfield Care factor regarding the fee arrangement between counsel and Van Wagenen, as well as the factor regarding fees customarily charged for similar legal services, these factors tilt toward neither party. That said, as Van Wagenen, of Minnesota, engaged Florida counsel to prosecute litigation in the District of New Jersey, it is reasonable to presume that Van Wagenen and counsel understood that there would be expenses related to counsel's appearances in this district.

The Northfield Care factor on the nature and difficulty of the responsibility presents a different calculus. On the one hand, as seen from a review of the hearing transcript of Van Wagenen's Motion to Dismiss the Third-Party Complaint, there simply was no basis for Unity's lawsuit. In essence, Unity filed an action claiming negligence knowing that the Tracking

Agreement provided that both parties to that contract agreed to hold the other party harmless for any negligence arising from the performance of their duties. Prevailing on the Motion to Dismiss, then, did not present a difficult case to Van Wagenen's attorneys. On the other hand, the ease of the problem presented weighs in favor of the grant of this Motion. That is because Unity filed suit claiming negligence in the face of the Hold-Harmless Clause. Unity also continues to press the same theory of the case in defense of this Motion that it did against Van Wagenen's Motion to Dismiss. The Third Circuit held that at the foundation of Rule 54 is a strong presumption that costs should be awarded to the prevailing party because the denial of costs is tantamount to a penalty. Reger v. Nemours Found., 599 F.3d at 288–89 (*citing* ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir.1975)). Here, Unity brought Third-Party Complaint that, as Judge Wolfson stated, didn't "tell me what it's based on," in the face of a "written agreement [that] makes crystal clear …what the duties are there." In other words, Judge Wolfson held that the Third-Party Complaint was deficient on its face, while the language of the Tracking Agreement negotiated between Unity and Van Wagenen was "crystal clear." And that Tracking Agreement provided, as applies to the instant action, that Unity would hold Van Wagenen harmless for any negligence, and that harm included "attorney's fees and court costs." While the Reger Court discussed Rule 54's provision for court costs, this Court finds this reasoning analogous to the instant issue. Thus, to deny Van Wagenen's motion would be to penalize Van Wagenen for having to defend itself against litigation for which the parties expressly agreed to hold each other harmless. Further, that Hold-Harmless Clause explicitly provided that the parties would hold each other harmless for precisely the attorney's fees and court costs Van Wagenen seeks in this Motion. Lastly, the Court observes that Van Wagenen's entry for travel-related expenses shows that the time was "mitigated by work on other matters."

Unity contends, however, that Van Wagenen is charging for three hours spent on traveling based on billed time of 6.5 hours to travel and attend the deposition of Mr. Mello, and noting that the deposition lasted from 10:15 a.m. to 1:39 p.m., or roughly 3.5 hours. Unity Br. at p.10, n.2. The Court observes that this entry states that time was spent attending and traveling to the deposition, but also "related follow-up consultations with American Southern and Unity counsel regarding discovery and progress of the case," something not reflected in Unity's objection.  Unity Br. at p.10. Absent a more-precise time objection from Unity, and mindful that

Coal. to Save Our Children stands in part for the proposition that foreign counsel may be compensated for adequately documented travel time when that time equals what local counsel could be expected to claim, the Court concludes the travel costs are reasonable. Accordingly, having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

      **IT IS** on this 13th day of February 2019,

      **ORDERED** that Third-Party Defendant's Motion to for Attorney's Fees [ECF No. 61] is **GRANTED;** and it is

      **FURTHER ORDERED** that Van Wagenen is awarded attorney's fees and costs in the amount of $63,662.28 as evidenced in the exhibits to the Van Wagenen's Motion, ECF No. 61, and to Van Wagenen's Reply Brief, ECF No. 65.

                      /s/ Douglas E. Arpert
                      DOUGLAS E. ARPERT
                      United States Magistrate Judge